**Mary STEVENSON, an individual, Plaintiff,**

v.

**Richard ROMINGER, the Secretary of Agriculture; United States Department of Agriculture; United States Forest Service, Defendants.**

**No. CY–95–3034–AAM.**

United States District Court, E.D. Washington.

Oct. 19, 1995.

Michael E. Haglund, Haglund & Kirtley, Portland, Oregon, for plaintiff.

James R. Shively, Assistant United States Attorney, Spokane, Washington, and Thomas L. Halkowski, Department of Justice, Environment & Natural Resources Division, Washington, D.C., for federal defendants.

## ORDER RE DISPOSITIVE MOTIONS

MCDONALD, District Judge.

On October 16, 1995, a hearing was conducted on Plaintiff's Motion for Partial Summary Judgment (Ct.Rec.16) and the Federal Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) & (6) (Ct.Rec.23). Plaintiff Stevenson was represented by Michael E. Haglund; Thomas L. Halkowski appeared on behalf of the federal defendants.

Plaintiff owns property which is subject to restrictive zoning regulations promulgated in connection with the Columbia River Gorge National Scenic Area Act. Under the provisions of this act, plaintiff invited the federal government to purchase her property for what she alleges was fair market value. She contends that the United States Forest Service violated the requirements of the act by offering a sum for her property that was dramatically below fair market value.

Currently before the court are the parties' dispositive cross-motions. Plaintiff seeks summary judgment as to this court's subject matter jurisdiction. Through this motion, plaintiff additionally seeks this court's declaration that it has the power to make a determination regarding the fair market value of her property. The federal defendants (hereinafter "defendants") seek to have this action dismissed for lack of subject matter jurisdiction and due to plaintiff's failure to state a claim for which relief may be granted. For the reasons set forth below, the court is granting the defendants' motion to dismiss and denying plaintiff's motion for summary judgment.

## BACKGROUND:

The Columbia River Gorge National Scenic Area Act (the "Act"), 16 U.S.C. §§ 544–544p, was enacted into law in 1986 for the purpose of enhancing the scenic, cultural, recreational, and natural resources of the Columbia River Gorge, while aiming at the same time to protect and encourage economic growth in the area. *See* 16 U.S.C. § 544a. To accomplish this, the Act created the Columbia River Gorge National Scenic Area and established an elaborate mechanism for regulating land use and development within this scenic area. The Scenic Area is divided into Special Management Areas (SMAs), which are administered by the United States Forest Service; General Management Areas (GMAs), which are administered by the Columbia River Gorge Commission; and exempt urban areas.

The SMA land is subject to substantial use restrictions. However, the Act allows owners of land in SMAs to take certain steps to avoid the rigors of the restrictive ordinances adopted with respect to these areas:

Any ordinance adopted pursuant to this section shall not apply to any parcel or parcels of land within a special management area if, after the date such ordinance has been adopted, three years have elapsed after has made a bona fide offer to sell at fair market value or otherwise convey such parcel or parcels to the Secretary, unless the affected landowner agrees to an extension of the three year period: *Provided,* That an offer shall not be considered bona fide if the landowner refuses consideration equal to the fair market value as appraised in accordance with the Uniform Appraisal Standards for Federal Land Acquisitions (Interagency Land Acquisition Conference, 1973). Lands for which an ordinance is suspended pursuant to this subsection shall be subject to the relevant scenic area land use ordinance pursuant to section 544e of this title.

16 U.S.C. § 544f(*o*). Thus, SMA landowners can essentially "opt-out" of the SMA land ordinance by requiring the government either to pay fair market value for their land or to allow the SMA classification of the land to lapse. The proper interpretation of this section of the Act forms the basis for this litigation and the current motions before the court.

## FACTS:

On October 15, 1991, the Columbia River Gorge Commission adopted the *Management Plan for the Columbia River Gorge National*

*Scenic Area.* After Klickitat County refused to adopt a Scenic Area ordinance that the Secretary of Agriculture and the Commission would certify as consistent with the Management Plan, the Commission promulgated such an ordinance for Klickitat County in August, 1993.

Plaintiff owns 21.6 acres of land within the SMA of the National Scenic Area. On May 26, 1994, plaintiff offered to sell her property to the Secretary of Agriculture for fair market value, as permitted by 16 U.S.C. § 544f(*o*). Plaintiff informed the Secretary that, in her opinion, the fair market value of her property is $400,000. On January 23, 1995, the Forest Service offered to purchase plaintiff's 21.6 acres for $108,000. In her affidavit, Mary Stevenson indicates that as of April 17, 1995, her property appraised at $255,000.

## DISCUSSION:

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

At the summary judgment stage, the court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. In resolving these issues, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Summary judgment is mandated against a party who fails to demonstrate the existence of a element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

### B. Analysis of Parties' Arguments

The defendants move the court to dismiss this action for lack of subject matter jurisdiction. Plaintiff, through her summary judgment motion, agrees that no disputes of fact exist on this issue; however, she maintains that the Act expressly provides this court with the power to review the Forest Service's offer to purchase her property because it constituted a final action under the Act which adversely affected her. The defendants argue in response that a proper interpretation of the Act reveals that plaintiff's action is neither a reviewable final agency action nor a controversy which is ripe for judicial intervention. The defendants also maintain that

the plaintiff has failed to state a claim on which relief may be granted, because the Act does not require the government to make any offer to purchase her property in the first place.

### 1. Subject Matter Jurisdiction

In the complaint, plaintiff asserts that this court has jurisdiction under 28 U.S.C. § 1331, and specifically, 16 U.S.C. 544m(b)(4) & (5). These subsections of the Act provide:

**(4) Judicial Review**

Any person or entity adversely affected by—

(A) any final action or order of a county, the Commission, or the Secretary relating to the implementation of sections 544 to 544p of this title;

(B) any land use ordinance or interim guideline adopted pursuant to sections 544 to 544p of this title;

(C) any appeal to the Commission pursuant to this section;

(D) any civil penalty assessed by the Commission pursuant to paragraph (a)(3) of this subsection may appeal such action or order by filing in any of the courts specified in paragraph (5) of this subsection, within sixty days after the date of service of such order or within sixty days after such action is taken, a written petition requesting such action, order, land use ordinance, interim guideline, or appeal taken to the Commission be modified, terminated, or set aside.

**(5) Federal Court Jurisdiction**

The United States district courts located in the States of Oregon and Washington shall have jurisdiction over—

.     .     .     .     .

(C) any appeal of any order, regulation, or other action of the Secretary taken pursuant to paragraph (4) of this subsection.

Plaintiff maintains that the Forest Service's offer to purchase her property is final action, relating to the implementation of the Act, which adversely affects her. (Ct.Rec. 19 at 14).

### a. The Forest Service's Offer is not Final Action

Stevenson argues that this offer must be considered reviewable final agency action because it reflects the Forest Service's completion of its decisionmaking process. She further contends that the offer has specific legal consequences, in that the offer triggered the operation of Section 8(*o*) of the Act.

The defendants agree with the plaintiff's legal definition of "final" agency action, but challenge the plaintiff's claim that the offer of $108,000 for her property meets that definition. They argue that although the offer was indeed an "actual purchase offer," it was "merely an initial attempt to secure ownership of the subject property." Defendants assert that the language of § 8(*o*) itself provides them with three years, during which the government can take various steps to negotiate a purchase of the land. The plaintiff objects, asserting that the government's offer to purchase land pursuant to § 8(*o*) is not merely a "negotiation tool" but a governmental act having clear statutory consequences. She further argues that the language of the Act contains nothing indicating that the purpose of this three year period in § 8(*o*) is to facilitate negotiation between the government and landowners. Thus, rather than being a "preliminary step in a continuing administrative process," plaintiff characterizes § 8(*o*) and the corresponding § 544m(b) as providing a direct basis for judicial review once the government has made any offer on a landowner's property.

In determining when agency action is final, the Supreme Court has looked to, *inter alia*, whether the action's impact " 'is sufficiently direct and immediate' " and has a " 'direct effect on . . . day-to-day business.' " *Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992), *quoting, Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). "The core question is whether the agency has completed its decision making process and whether the result of that process is one that will directly affect the parties. *Id.* The Ninth Circuit has recognized the general rule that administrative orders are not final and reviewable " 'unless

and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'" *Ukiah Valley Medical Center v. Federal Trade Comm'n,* 911 F.2d 261, 264 (9th Cir.1990), *quoting, Chicago & S. Air Lines Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). "Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one." *Mt. Adams Veneer Co. v. U.S.,* 896 F.2d 339, 343 (9th Cir.1990) (citations omitted).

■ Although the court is mindful of the fact that the plaintiff has waited nine years to be able to seek relief from the SMA restrictions placed on her land, it cannot accept the plaintiff's argument that the Forest Service's initial offer constitutes "final action" entitling her to judicial review at this juncture. Section 8(*o*) provides that the restrictive ordinance shall not apply to the plaintiff's land if three years elapse *after* plaintiff's bona fide offer to sell her property at fair market value. This provision is subject to the qualification that her offer shall not be considered bona fide if she refuses consideration equal to the fair market value as appraised in accordance with uniform standards. Pursuant to this section, the government could have chosen not to make plaintiff an offer; in such a case, plaintiff would have been required to wait three years until the SMA classification of her land would be relaxed. Furthermore, *even if* the court were to rule in her favor and determine that her offer was bona fide, the terms of 16 U.S.C. § 544f(*o*) indicate clearly to this court that she would be required to wait the full three years before the relaxation of SMA status would occur. In other words, regardless of this court's determination as to whether the defendant's offer was for fair market value and, correspondingly, whether the plaintiff's offer was bona fide, no change or modification in the legal status of her property could possibly occur until May, 1997.

Furthermore, accepting plaintiff's interpretation of § 8(*o*) would defeat what the court perceives as the purpose of having this three year waiting period and would also produce much potentially unnecessary litigation. For example, an owner of land in the special management area might make an initial offer to sell the property for an amount deemed too high by the government. Subsequently, the government might make its own counteroffer, rejected in turn by the landowner as too low. After three years passage, the landowner would presumably be able to obtain judicial review to determine whether the government's offer was for fair market value; if not, the SMA status of her property would be lifted. However, after the landowner's rejection of the first offer, the government might make one or more additional higher offers for the property. If the landowner rejects *all* of those offers, the determination that one of them *was* for fair market value would preclude the landowner's property from release from SMA status. Nothing in the Act supports the plaintiff's reading of § 8(*o*) as indicating that once the landowner rejects the government's initial offer, a court is empowered to determine the fair market value of the landowner's property.

The plaintiff's assertion that the government's offer triggers specific legal consequences under section 8(*o*) is simply incorrect. (Ct.Rec. 19 at 15). It is the *plaintiff's* offer that triggers the effect of this section; the government's offer or complete failure to make an offer has no effect on the operation of § 8(*o*). Plaintiff even acknowledges this in her reply memorandum. (Ct.Rec. 34 at 3). However, while the landowner's offer triggers the effect of § 8(*o*), that effect does not culminate until three years have passed. The plainest reading of this section indicates that *nothing happens under § 8(o) until three years after the landowner's bona fide offer, unless, of course, the landowner and the government reach an agreed resolution.* The evident purpose of this three year period is to foster the negotiation process between the government and the landowner and also to give the government sufficient time to decide whether or not it wants to keep the landowner's specific parcel of property as

SMA land. Stevenson's position that the government effectively gets one offer under § 8(o) before it must go to court and litigate the fair market value of landowners' property is at odds with the three year period built into this statute.

That plaintiff seeks such immediate relief is not surprising given the length of time that she has had to endure these restrictions on her property. However, the language of the section under which she now seeks relief from those restrictions makes it clear that whether or not the government makes any counteroffer on a landowner's property, the landowner must wait three years before there is any change in the legal classification of the landowner's property under the Act. Therefore, the Forest Service's offer of $108,000 cannot be considered "final action."

### b. Adversely Affected

■ For this court to have the power to review the issues presented by the plaintiff, the Forest Service's offer must not only be "final action" but must also have adversely affected the plaintiff. Stevenson argues that "[i]f she refuses the Forest Service offer because she believes it represents less than fair market value, she forfeits her section 8(o) "opt-out" right. If she accepts the offer, she is forced to sell her property for less than fair market value. The Forest Service's extension of the offer thus has direct and immediate legal effects on plaintiff." (Ct. Rec. 19 at 17).

■ However, plaintiff's assertions are inaccurate: Stevenson does not, by rejecting the government's offer, forfeit her "opt-out" right. Rather, if plaintiff rejects the government's offer, and three years pass, plaintiff will still be entitled to a relaxation of the SMA ordinance if it is found that the Forest Service's offer was not equal to fair market value as appraised in accordance with the Uniform Appraisal Standards for Federal Land Acquisitions. As noted above, the earliest point at which plaintiff could be impacted by the Forest Service's offer is three years after her initial offer. Upon the government's offer and her rejection thereof, the status quo is preserved until May, 1997. Thus, the harm identified by the plaintiff appears at this point to be entirely speculative.

During oral argument, however, plaintiff's counsel challenged the assertion that the adverse effects of the Forest Service's offer are merely speculative. Counsel explained that the government, by making the plaintiff an offer which expires after one year, had presented the plaintiff with a Hobson's choice. Counsel noted that upon rejecting the offer of $108,000, the government might well not make any additional offers to Stevenson for the balance of the three year period. If, at the conclusion of these three years, it is determined that the offer of $108,000 was indeed fair market value, Stevenson will be unable to accept this offer, since it will have expired by that time, and her property will continue to be subject to the SMA classification. Counsel implored the court to create a mechanism for immediate judicial review to ameliorate the hardship that these consequences would inflict upon the plaintiff.

The court finds, however, that to adopt plaintiff's suggestion would require an inappropriate exercise of judicial legislation. Section 8(o) makes it abundantly clear that the time for *any* review of the bona fide quality of the landowner's offer comes at the end of this three year period. Neither the wisdom of the length of this waiting period nor the fact that it may indeed work a hardship on the plaintiff are issues properly before this court. That Congress might have chosen a different design for this "opt-out" provision is immaterial; this court is obliged to interpret and enforce that section as it is written. Regardless of plaintiff's entreaties to this court, it is obvious that by including this three year period in § 8(o), Congress consciously chose *not* to provide for immediate judicial determination of the fair market value of SMA property.

Plaintiff's position essentially boils down to an assertion that § 8(o) is unfair. However, this argument is undermined by the fact that the pressures imposed by § 544f(o) are not entirely one-sided. If a landowner rejects the government's counteroffer to purchase SMA property, the government is also faced with a difficult decision. If the government

believes its offer will withstand review, it can wait three years at which time it will be determined whether or not its offer was properly for fair market value. However, if at that time the government's offer is deemed to have been insufficient at the time it was made, the government will be left in the uncomfortable position of either having to allow the SMA classification to be removed or paying the landowner essentially whatever the landowner demands.

The Forest Service's offer of $108,000 has done nothing more than present the plaintiff with a difficult decision. Her use of her property was restricted substantially prior to the offer and continues to be restricted notwithstanding the offer. The court finds that under these circumstances, plaintiff has not been "adversely affected" as explicitly required for judicial intervention under the Act.

### c. The Plaintiff's Complaint is not Ripe

"Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). The question of ripeness turns on " 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " *Pacific Gas & Electricity v. Energy Resources Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983) *quoting, Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *overruled on other grounds,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The ripeness doctrine prevents courts from deciding theoretical or abstract questions that do not yet have a concrete impact on the parties. *Assiniboine and Sioux Tribes v. Bd. of Oil & Gas,* 792 F.2d 782, 787 (9th Cir.1986).

Plaintiff argues that the government's valuation and purchase offer are fit for judicial review as there is nothing about the passage of time that will further define the issues. She argues that the fact that the parties may have engaged in informal discov-

ery and initial settlement talks does not render the case unripe. She also asserts that the claim is ripe because she filed it within 60 days of the challenged action, as required by 16 U.S.C. § 544m(b)(4)(D).

The government cogently describes as circular the plaintiff's argument regarding the filing of this action within 60 days. The fact that plaintiff may have met this statutory deadline is totally irrelevant if the court determines that the underlying "challenged action" does not constitute a controversy ripe for judicial intervention. Again plaintiff's arguments regarding ripeness depend on her premise that once the government has made a counteroffer to purchase a landowner's property pursuant to § 8(*o*), the three year waiting period specified in that section is inapplicable. She asserts that "the fact that defendants could have waited until the end of the three year period to present their valuation does not disqualify the case from judicial review where the government has acted earlier." (Ct.Rec. 34 at 6).

As noted above, the court finds plaintiff's premise to be mistaken. The three year waiting period under § 8(*o*) applies regardless of whether or not the government makes an offer to purchase a landowner's property. Section 8(*o*) allows the government to present a variety of offers; at the end of the three years, the court can determine whether any of these offers reflected the fair market value of the property. If not, then the plaintiff's offer would be considered bona fide, and she would be entitled to the relaxation of the SMA restrictions on her property. If it is determined that she turned down a valid offer for fair market value from the government, then her property would not qualify under this section.

If the government makes an offer which turns out to be higher than the Forest Service's offer of $108,000, then that lower offer will be rendered moot. Neither the parties nor this court can say for certain that the government will not adjust its initial offer upward before the three years elapses. To the contrary, the defendants have represented that they are willing to consider the basis for plaintiff's recent appraisal of $255,000.

Accordingly, given the possibility that the defendants may yet make further higher offers to the plaintiff within this three year period, the court finds that this case is not yet sufficiently concrete for resolution by this court.

**CONCLUSION:**

This court lacks subject matter jurisdiction over plaintiff's claim because the facts of this case do not meet the prerequisites for judicial review set forth in the Columbia River Gorge National Scenic Area Act. Moreover, plaintiff's claim is not ripe for adjudication. Based on this lack of jurisdiction, it is neither necessary nor appropriate for this court to rule on the merits-based 12(b)(6) claim brought alternatively by the defendants. Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss is **GRANTED;** plaintiff's motion for summary judgment is **DENIED.** Costs related to bringing this motion are awarded to the defendants; each party shall bear its own attorney fees.

**IT IS SO ORDERED.**